IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 14, 2011 Session

## WILLIAM N. NUSBAUM v. LUCILE E. NUSBAUM

**Appeal from the Circuit Court for Sumner County**
**No. 83CC12009CV1008      C.L. Rogers, Judge**

**No. M2011-00832-COA-R3-CV - Filed January 5, 2012**

In this divorce appeal, wife challenges the distribution of husband's federal retirement benefits, the award of transitional alimony, and the court's failure to award her attorney fees. Because of an error in the percentage of husband's FERS classified as marital assets, we reverse the trial court's decision. As to transitional alimony, we affirm the award of $500 per month but extend the award until the time of husband's retirement. We affirm the trial court's decision regarding attorney fees.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed in Part, Affirmed as Modified in Part, Affirmed in Part**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Elizabeth A. Garrett and Gregory Dye Smith, Nashville, Tennessee, for the appellant, Lucile E. Nusbaum.

Bruce N. Oldham and Sue Hynds Dunning, Gallatin, Tennessee, for the appellee, William N. Nusbaum.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

William Nusbaum ("Husband") and Lucile Nusbaum ("Wife") were married in 1994. No children were born of their marriage.

At the time of their marriage, Husband and Wife lived in Maryland, where they were both employed. Wife, who has a high school education, worked in the mortgage industry;

Husband, who has a degree in electrical engineering, worked for the federal government. Shortly after retiring from his job with the federal government, Husband moved to Tennessee in May 2003 to take a position at the University of Tennessee. The parties purchased a house in Tennessee in July 2003, and Wife joined Husband there in August 2003. After the move, Wife initially worked for a mortgage company but left that job after eight or nine months. She had some income in 2005 and 2006 but never returned to full time employment.

Husband filed for divorce in August 2009, and Wife counterclaimed for divorce. At the time when Husband's divorce petition was filed, Husband was 59 years old and Wife was 65 years old. The case was tried over two days in September 2010 and February 2011. The second day of the trial focused on evidence concerning the value of Husband's three pensions–a navy military retirement, a Federal Employee Retirement Service (FERS) pension, and University of Tennessee retirement benefits.

In its final order entered on March 22, 2011, the trial court found both parties to be equally at fault in the divorce. Wife was awarded the marital residence in Tennessee, valued at $280,000, subject to mortgages totaling $150,000. Wife owned a home in Maryland at the time of the parties' marriage; the court found that Husband had performed work on the property and that marital funds had been used to maintain the property. The court valued the Maryland property at $185,000; a debt of $49,770.59 was owed on the property. The court determined that Wife's separate interest was $27,823.24 and the marital portion was $107,406.17. The Maryland home was awarded entirely to Wife.

The court went on to value and divide the parties' pension benefits, retirement accounts, and other bank accounts. The court valued Husband's navy pension at $372,362.50, with only $37,125.54 being marital; the entire asset was awarded to Husband. As to the FERS pension, the court placed a value of $328,341.31 on the asset, with $138,724.20 classified as marital. Each party was awarded one-half of the marital portion ($69,362). The court found the total value of the marital estate to be $803,887, with Wife receiving $404,944 (50.37%) and Husband receiving $398,943 (49.63%).

As to alimony, the court concluded that, "the reasonable needs of the Wife in the long term can be satisfied by the Wife's Social Security income, the income she will receive from the distribution of the Husband's FERS pension and the assets she will receive from the other distribution of marital assets as well as her separate property . . . ." The court recognized that Wife was in need of some transitional alimony and ordered Husband to "continue to pay the Wife a sum equal to the amount of the first and second mortgages on the marital residence for a period of four months or until sale of the marital residence, whichever occurs first." The court further awarded Wife transitional alimony of $500 per month for a period of twelve months, commencing March 1, 2011.

The court declined to award Wife her attorney fees.

ANALYSIS

On appeal, Wife raises three issues: (1) Whether the trial court erred in its calculation of the marital portion of Husband's FERS benefits and in its distribution of those benefits. (2) Whether the trial court erred in awarding Wife transitional alimony of only $500 per month for twelve months. (3) Whether the trial court erred in denying Wife's request for her attorney fees and expenses.

(1)

We begin with the FERS pension benefits. On appeal, Wife does not challenge the court's valuation of the total FERS pension benefits at $328,341.[1] She argues, however, that the court erred in the portion of the FERS pension it classified as a marital asset. The trial court classified $138,724.20 as marital. Wife asserts that the proper calculation would result in a marital portion of $230,429 (70.18%), of which she should receive half.

The classification of property as separate or marital is a question of fact. *Snodgrass v. Snodgrass*, 295 S.W.3d 240, 245 (Tenn. 2009). Similarly, the valuation of a marital asset is a question of fact. *Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998). As to findings of fact, "we review the record de novo with a presumption of correctness, and we must honor those findings unless there is evidence which preponderates to the contrary." *Snodgrass*, 295 S.W.3d at 245 (quoting *Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007)). Conclusions of law, however, are accorded no presumption of correctness. *Id.* at 245-46.

With respect to the FERS pension, the trial court made the following findings and conclusions:

> The Husband was a participant in the FERS pension program prior to the marriage starting in November, 1987. During his active military service, the Navy did not withhold any Social Security payments and in 1994, he was given the option of paying the equivalent of the Social Security amount as a "Military Deposit" in the amount of $1474.35 and receiving six years credit toward his years of service for the purposes of taking early retirement. This did not increase the value of his pension; it merely made it possible for him to retire earlier and that the value of his pension was based upon his earnings for the three years prior to his date of retirement April 30, 2003.

---

[1] Wife's expert valued the total FERS benefits at approximately $335,000.

-3-

The Court finds that the Husband's FERS pension has a present fair market value of $328,341.31 and that the marital portion of this pension is $138,724.20. Each party is hereby awarded one-half of the 54.8% marital portion of this pension or 27.4%, which has a value of $69,362 per party.

There is no real dispute about the first paragraph of the court's findings, and Wife is not disputing the total value figure of $328,341.31 on appeal. We understand the trial court's finding that the military deposit "did not increase the value of his pension" to mean that Husband's monthly pension benefit did not change as a result of the additional six years of service. By making it possible for Husband to retire six years earlier, however, the additional six years of service did increase the present value of the pension.[2] The question before us is whether the value attributable to the additional six years should be considered marital or separate property.

The figures adopted by the trial court in the second paragraph of its findings (quoted above) reflect its reliance on the calculations provided by Pension Appraisers, which were presented by Husband's expert witness, Robert Jennings. It should be noted that the court erred in concluding that $138,724.20 represents 54.8% of the FERS pension; rather, as indicated in the Pension Appraisers report, $138,724.20 represents 42.25% of the total value of $328,341.31.

The question here is the proper portion of the FERS pension to consider as marital property, particularly in light of the addition of six years of credit to Husband's years of service after the parties' marriage and with marital funds. The trial court credited the expert testimony presented by Husband over that presented by Wife. Husband's expert, Mr. Jennings, relied upon calculations performed by a pension appraisal company, Pension Appraisers, based upon figures provided to them by Mr. Jennings. Pension Appraisers assumed that Husband's employment started on November 2, 1981, six years prior to his actual start date in November 1987. Presumably, this modification was to take into account the six additional years purchased in 1994. Mr. Jennings, apparently unaware of this modification, himself manually recalculated by adding in an additional six years. Wife argues, and we agree, that the total number of days of Husband's participation in the FERS is 7,845 days[3] (5,655 days of participation plus 2,190 purchased in 1994).

---

[2]We note that the expert calculations admitted into evidence concerning the value of the pension take into account the age at which benefits would begin and the life expectancy of the benefit recipient.

[3]Mr. Jennings based his calculations on a total of 10,035 days.

-4-

The trickier issue is the number of FERS days attributable to the marriage. It is undisputed that 3,316 days of the total FERS days occurred during the marriage (from April 1, 1994 through April 30, 2003). By paying a "military deposit," Husband added 2,190 days to his FERS participation, thus allowing him to retire six years earlier. Although Husband's active military service (for which he paid the military deposit) occurred prior to the marriage, the $1,474 military deposit was made during the parties' marriage and with marital funds. As a result of this deposit, six years of Husband's military service, which had not previously been considered for purposes of the FERS pension, were counted as years of participation under the FERS pension. Tenn. Code Ann. § 36-4-121(b)(1)(B) provides, in pertinent part, that marital property includes "the value of vested and unvested pension, vested and unvested stock option rights, retirement or other fringe benefit rights relating to employment that accrued during the period of the marriage." Pursuant to this provision, any increase in the value of pension benefits that accrues during the marriage, regardless of the reason for the increase, should be considered marital property. *Snodgrass*, 295 S.W.3d at 248-49.

Without offering specific calculations, Husband argues in favor of the result reached by the trial court–a marital portion of $138,724.20, which represents 42.25%, not 54.8% as stated by the trial court. The $138,724 figure appears to come from the report of Pension Appraisers, which reached this amount by dividing 3,315 days (time in the FERS plan during marriage) by 7,845 days (total days of participation, including 2,190 extra days from military deposit). Pension Appraisers did not add the military deposit days into the marital portion of the FERS pension.

We agree with Wife's reasoning that the value attributable to the additional six years should be considered marital because the military deposit was paid during the marriage with marital funds. Thus, the marital portion of the FERS days is 3,316 plus 2,190, or 5,506 days. Dividing 5,506 days (days attributable to marriage) by 7,845 days (total FERS days) yields a result of 70.18% for the marital portion, or $230,429.93, of which each party should receive one-half.

(2)

The next issue is whether the court erred in its award of temporary alimony in the amount of $500 a month for twelve months. Wife argues that the award is insufficient in amount and duration.

A trial court has broad discretion to determine the need for spousal support, as well as the appropriate nature, amount, and duration of that support. Tenn. Code Ann. § 36–5–121; *Bratton v. Bratton,* 136 S.W.3d 595, 605 (Tenn. 2004). An award of spousal support will not be disturbed on appeal absent an abuse of the trial court's discretion.

*Broadbent v. Broadbent,* 211 S.W.3d 216, 220 (Tenn. 2006). Under the abuse of discretion standard, a reviewing court cannot substitute its judgment for the trial court's judgment. *Wright ex rel. Wright v. Wright,* 337 S.W.3d 166, 176 (Tenn. 2011). Rather, a reviewing court will find an abuse of discretion only if the trial court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party." *Konvalinka v. Chattanooga–Hamilton County Hosp. Auth.,* 249 S.W.3d 346, 358 (Tenn. 2008); *see also Lee Med., Inc. v. Beecher,* 312 S.W.3d 515, 524 (Tenn. 2010). Therefore, "when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision." *Gonsewski v. Gonsewski,* 350 S.W.3d 99, 105-06 (Tenn. 2011).

Our Supreme Court has recognized the principle that "a trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors." *Id.* at 105 (footnote omitted). Decisions regarding the nature and amount of spousal support hinge upon the unique facts of each case and require careful consideration of the factors found at Tenn. Code Ann. § 36–5–121(i). *Oakes v. Oakes,* 235 S.W.3d 152, 160 (Tenn. Ct. App. 2007). Tenn.Code Ann. § 36–5–121(i) instructs the court to consider all relevant factors in determining whether spousal support is appropriate and in determining the nature, amount, length of term, and manner of payment, including the following:

> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
>
> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
>
> (3) The duration of the marriage;
>
> (4) The age and mental condition of each party;
>
> (5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36–4–121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

The most important considerations for the court in awarding alimony are the need of the disadvantaged spouse seeking support and the ability of the obligor spouse to pay support. *Bratton,* 136 S.W.3d at 640; *Oakes,* 235 S.W.3d at 160.

In making its alimony award, the trial court reasoned as follows:

The court finds that, taking into consideration the statutory factors of T.C.A. § 36-5-121 relative to alimony, that the reasonable needs of the Wife in the long term can be satisfied by the Wife's Social Security income, the income she will receive from the distribution of the Husband's FERS pension and the assets she will receive from the other distribution of marital assets as well as her separate property identified hereinabove. The Husband has already provided temporary support to the Wife for 20 months during the pendency of this case during which time the Wife took no action toward contributing to her own support. Further, the Wife owns a residence in Walkersville, Maryland which could be income producing, but she has elected to allow her son to live there rent-free. . . .

In the short term, the Court finds that the Wife is in need of some transitional alimony and orders that the Husband, in addition to the sums he has already paid to her during the pendency of this case, continue to pay the Wife a sum equal to the amount of the first and second mortgages on the marital residence for a period of four months or until sale of the marital residence, whichever occurs first. Additionally, he shall pay transitional alimony of $500.00 per month for twelve months, commencing March 1, 2011.

Elsewhere in its order the trial court made other findings relevant to the alimony determination. After reviewing Wife's income and expense statement claiming $4,541.35 per month in expenses, the court found "that the Wife has significantly exaggerated her needs and that her income and expense statement is not credible." The court noted that Husband continued to pay alimony to a former spouse. Having stated that Wife elected to quit her job and earn less income during the last years of the parties' marriage, the court went on to make the following findings:

> The Wife testified that she stopped working to take care of the Husband; the Husband testified that he had surgery for which his daughter (who is a nurse) came to provide him with care and he returned to work a month or so later and that the Wife simply told him one day she had quit working. The parties separated in June, 2009 and the Husband has provided support for the Wife thereafter without the necessity of a court order. The Wife testified that she receives Social Security income of $1047.00 per month. She further testified that she is thinking about setting up some kind of a sewing business, but has not yet done so (income from which is speculative), but gave no other reason as to why she doesn't contribute to her own support.

On appeal, Wife argues that she should have been awarded at least $2,300 a month in alimony in futuro, or transitional alimony through the time of Husband's retirement. Wife emphasizes her age at the time of the divorce (over 65), her high school education, and the fact that her previous employment was in the mortgage industry, which was in distress during the relevant time period. Husband acknowledged at trial that Wife could not be rehabilitated and that he had the ability to pay $2,300 a month. Wife also points out that the trial court divided the marital assets about equally; she argues that the trial court therefore did not make extra provision for support in the property division.

As stated above, we review the trial court's alimony decision under an abuse of discretion standard. In this case, the trial court found Wife's testimony concerning her needs and expenses not to be credible. A trial court's findings regarding credibility are given great deference by appellate courts because the trial court "observed the manner and demeanor of

the witnesses and was in the best position to evaluate their credibility." *Union Planters Nat'l Bank v. Island Mgmt. Auth., Inc.*, 43 S.W.3d 498, 502 (Tenn. Ct. App. 2000). We "will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999). Although Wife asserts that the trial court's credibility findings are not supported by the evidence, we cannot find that there is clear and convincing evidence to contradict the trial court's assessment. As to the distribution of marital assets, an equitable division does not necessitate an equal division. *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002). In justifying its alimony decision, the trial court expressly referred to the distribution of marital assets and Husband's FERS pension. Moreover, this court's decision with regard to the FERS pension makes the overall division of assets even more favorable to Wife.

We conclude that the trial court did not abuse its discretion in awarding Wife transitional alimony in the amount of $500 a month, but we find that the award should be extended to the time of Husband's retirement. As the trial court noted, any future income for Wife from her proposed sewing business is speculative. We find nothing in the record to justify limiting the transitional alimony to one year.

(3)

Wife's final argument is that the trial court erred in denying her request for an award of attorney fees and expenses.

Decisions to award attorney fees are reviewed under an abuse of discretion standard. *Huntley v. Huntley,* 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001). Thus, we are required to uphold the trial court's ruling "as long as reasonable minds could disagree about its correctness," and "we are not permitted to substitute our judgment for that of the trial court." *Caldwell v. Hill,* 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007).

The trial court made the following findings with regard to Wife's request for attorney fees:

> Counsel for the Wife submitted an affidavit of fees showing that the Wife incurred $15,290.00 in attorney fees; however, the affidavit does not specify the time spent for the actual services listed. Further, the affidavit shows that the client has already paid $10,000.00 toward those fees. The Wife had removed $10,000 from a joint account and she used these funds to pay her attorney. The Wife is receiving marital assets with in excess of $400,000.00 in addition to her separate property and therefore has sufficient assets to pay the remainder of her fees.

Wife asserts that, for the same reasons put forward with respect to the alimony award, the trial court should have awarded her attorney fees of $10,000 "based on the relative fault of the parties, her need and Mr. Nusbaum's ability to pay." The trial court found the parties "equally at fault" in the divorce. Moreover, as discussed above, the trial court found Wife's testimony regarding her needs and expenses not credible.

We find no abuse of discretion in the trial court's decision not to award Wife her attorney fees and expenses.

CONCLUSION

We reverse the trial court's decision with respect to the portion of the FERS pension to be classified as marital property; we affirm as modified the trial court's alimony award; and we affirm the trial court's decision with respect to attorney fees. Costs of this appeal, for which execution may issue if necessary, are assessed against Husband.

_____
ANDY D. BENNETT, JUDGE